PHILIP B. POPE *v.* CLAIBORNE BOWMAN, Adm'r.

1. PROMISSORY NOTES: INDORSERS: RIGHTS OF.—The Act of the 13th of May, 1837, (Hutch. Dig. 852,) was passed to regulate the proceedings of sheriffs in levying executions against the makers of notes, and drawers and acceptors of bills who are sued in the same action with their indorsers, and to protect the indorsers against compulsory payment of executions, until the legal remedy against the other defendants, primarily liable, should be exhausted; but it does not prevent the indorser from making a voluntary payment of the judgment, and thereby acquiring all the rights and remedies against the antecedent parties, as they existed at common law, before the passage of the statute.
2. SAME.—Hence, if a judgment be rendered against the maker and last indorser of a promissory note, the latter may voluntarily discharge the judgment, and maintain his action therefor against the first indorser, without an affidavit of the insolvency of the maker having been first made and filed.

IN error from the Circuit Court of Yazoo county. Hon. E. G. Henry, judge.

*George B. Wilkinson,* for plaintiff in error.

For the plaintiff in error it is contended, that the court below erred in ruling out the record and receipt offered in evidence, because it did not appear that any affidavit of the insolvency of the drawer was filed in the cause, or any other evidence of such affidavit having been made before the payment of the execution by Pope.

The statute, (Hutch. Code, 853,) says, "that in no case shall a levy be made on the property of any surety, &c., unless an affidavit be made," &c. The court will notice that this is not an application by the surety to protect his property from seizure and sale, until the estate of the principal debtor is exhausted, but is a suit by a subsequent indorser to recover the amount paid by him from a prior indorser. That this act was directory to the sheriff, see *Hamblin* v. *Foster,* 4 S. & M. 139. The object of it was to protect the surety or indorser, and *to restrain the sheriff* from proceeding against them, until he is furnished with proof that the principal has no estate subject to the execution. *Doe* v. *Pritchard,* 11 S. & M. 335. The surety therefore might well pay the debt

without levy, waiving the affidavit.   What he might be forced to do he might do voluntarily.

That no such affidavit was necessary as to the first indorser, see the case of *Hamblin* v. *Foster*, cited above.   This court has heretofore decided that a subsequent indorser, who pays a promissory note, may recover of the parties primarily bound.

*Gibbs* and *Bowman*, for defendant in error.

By the 6th section of the Act of 1837, (Hutch. Code, 853,) Pope was under no sort of obligation to pay this execution.   This court said, in *Hamblin et al.* v. *Foster et al.*, 4 S. & M. 152, the filing of the affidavit is a " condition precedent to the progress of executions against subsequent parties," &c.   After the judgment, the liability of Pope was upon the judgment only: this liability was, under the statute, a conditional one.   He had by law, the right to have executions issued against the makers; and upon their return, he had a right, before his liability attached, to have an affidavit of the insolvency of the makers.   The first indorser, too, had this right.   He had the right, after judgment, to have the maker's property first appropriated, according to the requirements of the statute, before any collateral liability could attach as to him.   If Pope has thought proper to waive this right, and voluntarily incur a liability the law did not impose, our client is not responsible for it.   He must pay the penalty of his own folly.   He cannot give up the security which the law has given to all the indorsers to enforce the collection of the debt, out of the property of the makers.   He cannot satisfy the judgment voluntarily and *destroy our indemnity*, and seek satisfaction from us.   He has sought indemnity in this action for an enforced collection by judgment and execution—a discharge of a legal liability; he has failed in his proof to show a legal liability on his part, or any necessary payment.   The contract of an indorser is, to be bound for a legal liability; no discharge of a legal liability is shown by plaintiff; nor has any liability yet attached, as to the first indorser.

HANDY, J., delivered the opinion of the court.

This was an action brought by the plaintiff in error, the last

indorser of a promissory note, made by one Thomas, against the intestate of the defendant in error, the first indorser of the same note. Judgment had been rendered against the maker and the plaintiff in error, on which execution was issued, and returned "*nulla bona.*" The judgment was then paid by the plaintiff in error to the agent of the plaintiff, while an execution thereon was in the hands of the sheriff; and this action was thereupon brought to recover from the first indorser the money so paid.

On the trial, the plaintiff offered in evidence the judgment and execution, and proposed to prove payment made by him to the agent of the plaintiff in the execution; which evidence was objected to, on the ground that it was not shown that any affidavit of the insolvency of the maker of the note had been made when the money was paid. The objection was sustained, and the evidence excluded; and the plaintiff excepted.

The only question to be determined is, whether, with reference to the provisions of the Act of 13th of May, 1837, (Hutch. Code, 852,) a subsequent indorser is justified in paying a judgment rendered against the maker and himself, without an affidavit of the insolvency of the maker; and whether, if he make such payment under such circumstances, he can recover the money from the maker or a prior indorser. And we are satisfied that the affirmative of these propositions is true.

The provisions of the Act of 1837 referred to, apply to and regulate the proceedings of the sheriff in levying executions against makers of notes and acceptors and drawers of bills, who may be sued in the same action with the indorsers. The object of these provisions was the protection of indorsers from compulsory payment of executions against them, until the legal remedy against the other defendants, primarily liable, should be exhausted. This was intended for the benefit of indorsers, and it would be a perversion of the spirit of the statute to give it an effect to their prejudice.

When the statute was passed, an indorser had the unquestionable right to go forward at the maturity of paper and take it up, when the maker or drawer had failed to do so. And this right is clearly not taken away by the statute. Upon the same principle,

he had the right to pay and satisfy a judgment rendered against him on the paper; and in both these cases, the payment would have entitled him to recover against a prior party to the paper, who was liable to him by law. . And it cannot be supposed that the right to make a voluntary payment of such a judgment was intended to be taken away by the statute. For it might happen, that the plaintiff would not make the necessary affidavit, and no other person might be found who would make it. In such a case, what would be the condition of the indorser, and what course should he pursue? It cannot be that the statute contemplates that he should make the affidavit; for it would be absurd to suppose that he should be compelled to make an affidavit, in order that an execution might be levied of his own estate, or he might be unable, conscientiously, to make it. There would, then, be no affidavit; and in such case, the indorser would be compelled to submit to having an unsatisfied judgment in force against him, with all the discredit and injury which might arise from it.

It is manifest, that a construction of the statute, leading to such a result, was never contemplated, and should not be sanctioned. To sustain such a construction, would be to deprive the indorser of a privilege which he had when the statute was passed, and to pervert a statute, intended for his protection and benefit, into the means of injury. And we are satisfied that it was never intended to deprive the indorser of the power of doing anything that he might legally have done for his own protection, at the time of the passage of the statute.

The evidence offered by the plaintiff was, therefore, improperly excluded; and the judgment is reversed, and the cause remanded for a new trial.